# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVARISTO CHAVARRIA, | Case No. 1:12-cv-00692-SAB |
| Plaintiff, | **ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Evaristo Chavarria ("Plaintiff") filed this action seeking judicial review of the final decision of Defendant Commissioner of Social Security ("Defendant" or "Commissioner") denying Plaintiff's application for benefits under the Social Security Act. (ECF No. 1.) All parties have consented to the jurisdiction of a United States Magistrate Judge for all purposes. (ECF Nos. 5, 11.)

Plaintiff suffers from degenerative disc disease of the cervical and lumbar spine and status post lumbar laminectomy. For the reasons set forth below, Plaintiff's appeal from the administrative decision of the Commissioner is denied.

/ / /

/ / /

/ / /

# I.

# FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff filed his application for Social Security benefits on November 20, 2008. (AR 12.) Plaintiff alleged a disability onset date of January 1, 2001. (AR 12.) Plaintiff's application was initially denied on March 18, 2009 and then denied upon reconsideration on July 16, 2009. (AR 12.) On August 26, 2009, Plaintiff requested a hearing. (AR 12.)

On November 4, 2010, a hearing took place before Administrative Law Judge James P. Berry ("the ALJ"). (AR 12.) Plaintiff was represented by an attorney at the hearing. (AR 12.) At the hearing, Thomas C. Dachelet testified as a vocational expert ("the VE"). (AR 12.)

On November 23, 2010, the ALJ issued his determination that Plaintiff was not disabled and did not qualify for Social Security benefits. (AR 12-20.) On March 19, 2012, the Appeals Council denied Plaintiff's request for review. (AR 1.)

### A.    Plaintiff's Hearing Testimony

Plaintiff was born on June 19, 1970, making him 40 years old on the date of the hearing. (AR 28.) Plaintiff attended school through the twelfth grade. (AR 28.)

Plaintiff had surgery in his lower back and needed surgery again. (AR 31.) Plaintiff also has three herniated discs in his neck along with what Plaintiff describes as a "bone spur going through a[n] atery." (AR 31.) Plaintiff receives treatment from Dr. Garcia at the Family Health Care Network. (AR 31.)

Plaintiff suffers from excruciating pain, which he described as "a burning sensation" and "like having something poking you ... or stabbing at you all the time." (AR 32.) Plaintiff also suffers from migraines. (AR 32.) Plaintiff gets spasms on the left side of his body. (AR 33.) Plaintiff's condition has been getting worse. (AR 32-33.)

Plaintiff testified that he can lift ten pounds at the most. (AR 33.) Plaintiff can stand for 15 minutes at a time. (AR 33.) Cumulatively, Plaintiff could stand for less than two hours in an eight hour day. (AR 34.) Plaintiff could sit for less than two hours in an eight hour day. (AR

---

[1] Citations to the Social Security Administrative Transcript will be designated as "AR" (administrative record). Page numbers will refer to the page numbers as stamped and indexed in the lodged transcript. (See ECF No. 12.)

34.) Plaintiff has to lie down for six hours out of an eight hour day. (AR 35.) Plaintiff can walk one block at a time. (AR 36.) Plaintiff can concentrate for twenty minutes at a time. (AR 36.)

Plaintiff also reported that he cannot afford his medications. (AR 35.) Plaintiff stated that the water, gas and electricity were turned off in his home. (AR 35.)

On a normal day, Plaintiff may try to get up and walk "to the corner." (AR 39.) Plaintiff also tries to socialize with his neighbors. (AR 39.) Plaintiff can dress himself, shower and take care of his personal needs. (AR 39.) Plaintiff has trouble tying his shoes because he has trouble bending over and his left hand shakes. (AR 40.) Plaintiff sometimes drops his keys when he is trying to get into the house. (AR 40.) Plaintiff feels numbness in his ring finger and little finger on both hands. (AR 40.)

### B. Vocational Expert Testimony

The ALJ provided the following hypothetical to the VE:

- Can lift 20 pounds occasionally and 10 pounds frequently;
- Can stand, walk or sit for six hours each;
- Can occasionally climb ramps and stairs;
- Can occasionally balance, stoop, kneel, crouch or crawl; and
- Cannot climb ropes, ladders or scaffolds.

(AR 47.) The VE testified that such a person could not perform Plaintiff's past relevant work as it was actually performed, but could perform such work as it is described in the Dictionary of Occupational Titles ("DOT"). (AR 47.) The VE further testified that such a person could perform any sedentary and light unskilled work. (AR 47-48.) Examples of such work include "linen dash supply load builder" (43,839 jobs in California), "garment sorter" (20,956 jobs in California) and "ampoule filler" (19,976 jobs in California). (AR 48.)

The ALJ presented a second hypothetical with the following limitations:

- Can stand, walk and sit for less than two hours;
- Must walk 15 minutes every 15 minutes;
- Must have unscheduled work breaks every hour;
- must use an assistive device to walk; and

3

1 
- Can occasionally lift and carry 20 pounds;

(AR 49.) The VE testified that such a person could not perform any work. (AR 49.)

Plaintiff's attorney presented a third hypothetical, involving a person who would likely miss more than four days a month due to his impairments or for treatment. (AR 50.) The VE testified that such a person could not work. (AR 50.)

### C.  The ALJ's Findings

The ALJ made the following findings of fact and conclusions of law:

- Plaintiff has not engaged in substantial gainful activity since November 20, 2008;
- Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine and status post lumbar laminectomy;
- Plaintiff's depression is a medically determinable impairment but does not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities and is therefore non-severe;
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
- Plaintiff has the residual functional capacity to perform light work (lift and carry 20 pounds occasionally and 10 pounds frequently), can occasionally climb ramps and stairs, can occasionally balance, stoop, kneel, crouch and crawl and cannot climb ropes, ladders or scaffolds;
- Plaintiff is capable of performing past relevant work as a substitute teacher; and
- Plaintiff has not been under a disability since November 3, 2008.

(AR 12-20.)

## II.

## LEGAL STANDARDS FOR JUDICIAL REVIEW OF SOCIAL SECURITY DETERMINATIONS

An individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). The Court "reviews the

1  Commissioner's final decision for substantial evidence, and the Commissioner's decision will be
2  disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v.
3  Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla,
4  but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal
5  quotations and citations omitted). "Substantial evidence is 'such relevant evidence as a
6  reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v.
7  Perales, 402 U.S. 389, 401 (1971)). "[A] reviewing court must consider the entire record as a
8  whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill,
9  698 F.3d at 1159 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).
10 However, it is not this Court's function to second guess the ALJ's conclusions and substitute the
11 Court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)
12 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's
13 conclusion that must be upheld.")

## III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred for two reasons. First, Plaintiff contends that the ALJ failed in failing to adopt the opinion of Dr. Garcia, a treating physician. (App. Opening Brief 8-13.) Second, Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons to reject Plaintiff's testimony regarding the severity of his symptoms. (App. Opening Brief 13-14.)

### A.   The ALJ Did Not Err In Failing To Adopt The Opinion Of Dr. Garcia

Plaintiff argues that the ALJ erred in failing to adopt Dr. Garcia's opinions regarding Plaintiff's impairments and limitations. (App. Opening Brief 8-13.) Plaintiff contends that the ALJ's proffered reasons for rejecting Dr. Garcia's opinions are not valid. (App. Opening Brief 9.)

#### 1.   Legal Standards Pertaining To Opinions Of Treating Physicians

"By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007). "If a treating

physician's opinion is 'well-supported ... and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." Id. Even if a treating physician's opinion is not given controlling weight, the opinion is still entitled to deference and the ALJ must consider specified factors in determining the weight it will be given, including (1) the length of the treatment relationship and the frequency of examination and (2) the nature and extent of the treatment relationship. Id. Additional factors relevant in evaluating the weight of any medical opinion, not just treating physician opinions, include: (3) the amount of relevant evidence that supports the opinion and the quality of the explanation provided, (4) the consistency of the medical opinion with the record as a whole, (5) the specialty of the physician providing the opinion, (6) and other factors such as the degree of understanding a physician has of Social Security disability programs and their evidentiary requirements and the physician's familiarity with other information in the record. Id.

If a treating physician's opinion is not contradicted by another doctor, it may only be rejected for clear and convincing reasons supported by substantial evidence. Id. at 632 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). Even if the treating physician's opinion is contradicted by another doctor, it may not be rejected unless the ALJ provides specific and legitimate reasons supported by substantial evidence. Id. (quoting Reddick, 157 F.3d at 725). The conclusions of an examining physician cannot in and of itself constitute "substantial evidence" to reject a treating physician's opinions if both opinions are based upon the same clinical findings. Id. However, if the examining physician provides independent clinical findings that differ from the findings of the treating physician, the examining physician's opinion may constitute substantial evidence to reject the treating physician's opinion. Id. (quoting Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)).

### 2. The ALJ's Treatment of Dr. Garcia's Opinions

The ALJ stated that he did not give Dr. Garcia's opinions controlling weight. (AR 18.) The ALJ noted that Dr. Garcia did not provide any "physical signs or laboratory or radiology findings to support his opinion." (AR 18.) The ALJ also noted that Dr. Garcia "based his assessment on the claimant's subjective statements regarding the pain." (AR 18.) Finally, the

ALJ noted that "Dr. Garcia does not see the claimant regularly," having only seen Plaintiff four times since 2007. (AR 18.)

      3.      <u>Summary of Dr. Garcia's Opinions</u>

Dr. Reynaldo Garcia, M.D. indicated that he saw Plaintiff on approximately four occasions between March 31, 2007 and June 11, 2010. (AR 270.) However, the record only contains reports from Dr. Garcia from visits on October 5, 2009 and June 11, 2010. (AR 265, 276-277.) On October 5, 2009, Dr. Garcia saw Plaintiff at the Family Healthcare Network – Porterville Patient Encounters. (AR 264.) Dr. Garcia noted "[d]egenerative disk disease of the cervical spine" and prescribed Vicodin and Flexeril. (AR 264.) Dr. Garcia saw Plaintiff again on June 11, 2010. (AR 276-277.) Plaintiff came for a follow up visit and also "brought a form for functional capacity testing for [Dr. Garcia] to fill out today." (AR 276.) Plaintiff's "Physical findings" were all within the "Normal Ranges" except for blood pressure (136/88 vs. normal range of 100-120/60-80), weight (236.25 lbs vs. 125-225 lbs) and body mass index (30.7 vs. 18-25). (AR 276.) Dr. Garcia noted an "[a]bnormal movement of extremities." (AR 277.) Dr. Garcia's "Assessment" stated "Backache" and "Chronic pain syndrome." (AR 277.) Dr. Garcia's "Plan" stated "Flexeril" and "Vicodin." (AR 277.)

On June 16, 2010, Dr. Garcia completed a Residual Functional Capacity Questionnaire ("the Questionnaire") for Plaintiff. (AR 270-274.) The Questionnaire indicates that Dr. Garcia first saw Plaintiff on March 31, 2007, last saw Plaintiff June 11, 2010, and saw Plaintiff approximately four times total, and approximately every six months. (AR 270.) Dr. Garcia wrote that Plaintiff's diagnosis was "chronic pain syn[drome] 2° to degenerative disc disease of the spine." (AR 270.) Plaintiff's prognosis was "fair." (AR 270.) Dr. Garcia opined that Plaintiff would "occasionally" "experience pain, fatigue or other symptoms severe enough to interfere with attention and concentration needed to perform even simple work tasks." (AR 271.)

Dr. Garcia further opined that Plaintiff could maintain attention and concentration for twenty minutes at a time and is capable of tolerating low stress jobs. (AR 271-272.) Dr. Garcia further opined that Plaintiff could walk half a city block without rest or severe pain, can sit for five minutes at a time before needing to get up, can stand five minutes at a time before needing to

sit down or walk around, can sit for less than two hours in an eight hour day and can stand/walk for less than two hours in an eight hour day. (AR 272.) Moreover, Plaintiff must have periods of walking around during an eight hour day, occurring every fifteen minutes and lasting fifteen minutes in duration. (AR 272.) Plaintiff does not require job accommodations allowing him to shift positions at will from sitting, standing or walking. (AR 273.) Plaintiff must take unscheduled breaks every hour for ten minutes. (AR 273.) With prolonged sitting, Plaintiff's legs should be elevated two feet. (AR 273.) Plaintiff must use a cane or other assistive device. (AR 273.) Plaintiff can occasionally carry twenty pounds. (AR 273.) Plaintiff can rarely look down or turn his head right or left and can occasionally look up and hold his head in a static position. (AR 273.) Plaintiff can rarely crouch or climb ladders and can occasionally twist, stoop and climb stairs. (AR 273.) Plaintiff has significant limitations in doing repetitive reaching, handling or fingering. (AR 274.) Plaintiff, on average, would likely be absent from work as a result of his impairments or for treatment more than four days per month. (AR 274.)

Notably, Dr. Garcia did not provide a response to several questions in the form Questionnaire. Dr. Garcia did not respond to question numbers six ("Identify the *clinical findings*, laboratory and test results and objective signs which show your patient's medical impairments"), twelve ("Are your patient's impairments (physical impairments plus any emotional impairments) *reasonably consistent* with the symptoms and functional limitations described in this evaluation"), the second half of fourteen (asking Dr. Garcia to "Please explain the reasons for your conclusions" pertaining to Plaintiff's ability to tolerate work stress) and fifteen, subpart h.2 ("if your patient had a sedentary job, what *percentage of time* during at[sic] 8-hour working day should the leg(s) be elevated?"). (AR 270-273 (italics in original).)

3. The ALJ's Treatment of Dr. Garcia's Opinions Is Supported By Substantial Evidence

The Court finds that the ALJ's treatment of Dr. Garcia's opinions is proper and supported by substantial evidence. The factors identified in Orn and in 20 C.F.R. § 404.1527(c) support the ALJ's decision to afford limited weight to Dr. Garcia's opinions.

/ / /

As noted by the ALJ, the length of the treatment relationship was short (approximately three years) and the examinations were infrequent (approximately four total examinations). The ALJ also noted that the nature and extent of the treatment relationship suggest limited weight should be afforded to Dr. Garcia's opinions because they appear to be largely based upon Plaintiff's subjective reports regarding the severity of his symptoms, as opposed to objective clinical findings.

The amount of relevant evidence supporting the opinion and the quality of the explanation provided are both very low. Dr. Garcia did not cite any evidence in the Questionnaire, which is particularly noteworthy because several questions in the Questionnaire prompted Dr. Garcia to provide explanations or cite clinical findings and Dr. Garcia left those responses blank. As noted by the ALJ, Dr. Garcia's opinions were conclusory and brief. See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may reject a treating physician's opinion if it is conclusory, brief and unsupported by the record as a whole). In particular, the ALJ noted that Dr. Garcia opined that Plaintiff suffered from various postural limitations, yet failed to cite specific objective findings that corroborate those limitations. (AR 18.)

Dr. Garcia's opinions are also contradicted by the other evidence in the record. Dr. Theodore Georgis, Jr., MD examined Plaintiff on February 11, 2009. (AR 232-237.) Dr. Georgis noted that Plaintiff appeared to be in mild to moderate discomfort, but walked unassisted into the waiting room and sat "fairly comfortably throughout the examination." (AR 234.) Plaintiff was able to get up and off the examination table without significant trouble and was able to take his shoes off and on. (AR 234.) Notably, Dr. Georgis remarked that Plaintiff "seems to overstate his symptoms in excessive detail." (AR 234.) Dr. Georgis opined that Plaintiff could stand or walk up to six hours, sit up to six hours, needs no assistive devices, and could lift 20 pounds occasionally and 10 pounds frequently. (AR 236.) Dr. Georgis further opined that Plaintiff is limited to frequent climbing, balancing, stooping, kneeling, crouching and crawling. (AR 237.) Plaintiff did not have any manipulative limitations or workplace environmental limitations. (AR 237.)

Dr. G. Spellman, M.D. also authored a Physical Residual Functional Capacity Assessment and a Case Analysis as a non-examining doctor. (AR 238-245.) Dr. Spellman's assessment was similar to Dr. Georgis', but Dr. Spellman did opine that that Plaintiff suffered from more restrictive postural limitations. Dr. Spellman indicated that Plaintiff could only occasionally climb ramps and stairs, balance, stoop, kneel, crouch or crawl. (AR 240.) Plaintiff could never climb ladders, ropes or scaffolds. (AR 240.) Dr. Garcia's opinions regarding Plaintiff's limitations are markedly more restrictive than those provided by Dr. Georgis and Dr. Spellman.

Finally, nothing in the record suggests that Dr. Garcia possesses a relevant specialty, an understanding of Social Security programs and their evidentiary requirements, or was familiar with the other information in the record.

Plaintiff argues that it was improper for the ALJ to discredit Dr. Garcia's opinion because it was based upon Plaintiff's subjective allegations regarding the severity of his symptoms, which the ALJ found to be not fully credible. Plaintiff cites law that states that it is not proper to discredit a claimant's allegations solely on the ground that those allegations are insufficiently supported by objective medical evidence. (App. Opening Brief 9-10.) For the reasons discussed below, Part III.B, the ALJ properly cited sufficient grounds to discredit Plaintiff's allegations. The ALJ's assessment of Plaintiff's credibility was not based solely on the fact that his allegations were not supported by objective medical evidence. Accordingly, it was proper for the ALJ to afford less weight to Dr. Garcia's opinions because they were based upon subjective allegations that were not credible. See Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (physician's opinion premised on claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted).

Plaintiff also argues that it was "inconsistent" for the ALJ to give greater weight to the "one-shot" consultative exam performed by Dr. Georgis while discounting Dr. Garcia's opinions in part because Dr. Garcia only treated Plaintiff four times. (App. Opening Brief 10-11.) The Court finds no "inconsistency" in the ALJ's analysis. It is well established that one factor in assessing the weight to be afforded to a treating physician's opinion is the length of the treatment

relationship and the frequency of treatments. See Orn, 495 F.3d at 631; 20 C.F.R. § 404.1527(c)(2)(i). The analysis described in Orn and Section 404.1527(c)(2)(i) does not call for a comparison between the length or frequency of visits between the treating physician and the examining physician. Section 404.1527(c)(2) recognizes that consultative exams are often "one-shot" examinations that may not be as detailed as multiple examinations over the course of an ordinary treatment relationship. However, Section 404.1527(c)(2)(i) recognizes that the presumption that treating physician opinions are entitled to greater weight may be rebutted if the treating relationship is so short that the treating physician would not "have obtained a longitudinal picture of [the claimant's] impairment." The ALJ has properly done so here and there is no "inconsistency."

Based upon the foregoing, the Court finds that the ALJ properly cited specific and legitimate reasons supported by substantial evidence in affording less weight to Dr. Garcia's opinions. The ALJ did not err by refusing to adopt Dr. Garcia's opinions regarding the severity of Plaintiff's limitations.

**B.  The ALJ Did Not Err In Assessing Plaintiff's Credibility**

Plaintiff argues that the ALJ erred by discrediting Plaintiff's subjective allegations pertaining to the severity of his impairments. (App. Opening Brief 13-14.) Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons to reject Plaintiff's allegations. (App. Opening Brief 14.)

1.  Legal Standards Pertaining To The Assessment Of Plaintiff's Credibility

The ALJ is required to make a credibility determination that includes findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). "The ALJ conducts a two-step analysis to assess subjective testimony where, under step one, the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom." Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996)). If the claimant meets this threshold and there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the

severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. (quoting Smolen, 80 F.3d at 1283-84.) Factors in weighing a claimant's credibility include (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the claimant's daily activities. Id. (quoting Smolen, 80 F.3d at 1284.)

### 2. The ALJ's Assessment Of Plaintiff's Credibility

The ALJ determined that Plaintiff's medically determinable impairments could be expected to cause some degree of symptoms, but Plaintiff's statements regarding the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the objective medical findings. (AR 17.) The ALJ noted that Plaintiff does not obtain steady treatment or take his pain medications regularly. (AR 17.) (AR 17.) Moreover, the ALJ noted that the medical reports did not include any objective findings corroborating Plaintiff's statements regarding the degree of pain. (AR 17.) The ALJ also noted that Workers Compensation apparently closed Plaintiff's claim without providing further treatment or tests. (AR 17.) Finally, the ALJ noted that Dr. Georgis opined that Plaintiff was overstating his symptoms in excessive detail and that Plaintiff's subjective limitations were not fully supported by the objective findings. (AR 17.)

### 3. The ALJ Cited Clear And Convincing Reasons To Discredit Plaintiff's Testimony

The Court finds that the ALJ properly cited specific, clear and convincing reasons to discredit Plaintiff's testimony. The ALJ properly cited Dr. Georgis' report as specific, clear and convincing evidence that Plaintiff was exaggerating the severity of his impairments and was not credible. Dr. Georgis observed that Plaintiff "seems to overstate his symptoms in excessive detail." (AR 234.) Dr. Georgis commented on apparent inconsistencies, such as when Plaintiff "complained of increased low back pain bilaterally in the supine position at the straight leg raise at 20 degrees but no leg pain with this maneuver [straight leg raising in the seated and supine positions]." (AR 235.) Dr. Georgis also observed that Plaintiff walked unassisted, sat

comfortably throughout the exam and was able to get up and off the exam table without significant trouble. (AR 234.) Notably, Plaintiff testified that he had trouble tying his shoes (AR 40), but Dr. Georgis noted that Plaintiff had no difficulty taking off or putting on his shoes. (AR 234.)

Dr. Georgis' report serves as specific, clear and convincing evidence supporting the ALJ's decision to afford limited credibility to Plaintiff's testimony. The ALJ did not err in assessing Plaintiff's credibility.

### IV.

### CONCLUSION AND ORDER

Based upon the foregoing, the Court finds that the ALJ's analysis was proper and the ALJ's determination is supported by substantial evidence. Specifically, the ALJ did not err in affording limited weight to Dr. Garcia's opinions and the ALJ did not err in his assessment of Plaintiff's credibility. Therefore, the ALJ's ultimate conclusion that Plaintiff was not disabled was based upon the proper legal standards and was supported by substantial evidence. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.

IT IS FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Evaristo Chavarria. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __April 16, 2013__                    _____
                                                                    UNITED STATES MAGISTRATE JUDGE